UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQULYNN PATRICIA POWELL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:22-cv-00411-CDB (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>(Docs. 20, 24) |

Plaintiff Jacqulynn Patricia Powell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 20, 24). Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as follows.[1]

**I.   BACKGROUND**

**A. Administrative Proceedings and ALJ's Decision**

On February 21, 2018, Plaintiff filed a Title II application for disability insurance benefits,

---

[1] On June 29, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S. Magistrate Judge. (Doc. 8).

1  alleging a period of disability beginning February 1, 2017. (AR 118-124). Plaintiff's application
2  was denied. (AR 57-65). Plaintiff then filed a request for a hearing before an Administrative Law
3  Judge ("ALJ"). (AR 75-76). On October 17, 2019, the assigned ALJ, Mikel Lupisella, held a
4  hearing; Plaintiff attended, as did vocational expert ("VE") Michelle Ross. Plaintiff appeared
5  without counsel. (AR 36-56). The ALJ issued his decision on January 28, 2020, finding Plaintiff
6  not disabled. (AR 20-35). On August 31, 2020, the Appeals Council denied Plaintiff's request for
7  review. (AR 5-10). Thereafter, Plaintiff filed the instant action.

8  In his decision, the ALJ used the five-step sequential evaluation process promulgated by
9  the Social Security Administration for determining whether an individual is disabled. (AR 24-25;
10 citing 20 C.F.R. 404.1520(a)). At step one, the ALJ found that Plaintiff had not engaged in
11 substantial gainful activity since her alleged onset date of February 1, 2017, through her date last
12 insured of December 31, 2017. At step two, the ALJ concluded that Plaintiff had the following
13 severe impairments: diabetes mellitus, major depressive disorder, and post-traumatic stress
14 disorder. The ALJ also found that Plaintiff had the following non-severe impairments: obstructive
15 sleep apnea, hypertension, and high cholesterol. (AR 25-26). At step three, after identifying these
16 impairments, the ALJ found that Plaintiff did not have an impairment, or any combination of
17 impairments, that meets or medically equals the severity of one of the listed impairments in 20
18 C.F.R. Part 404, Subpart P, Appendix 1. (AR 26).

19 The ALJ reached this determination by considering the four broad functional areas of
20 mental functioning listed in the "paragraph B" criteria. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.
21 The first functional area is understanding, remembering, or applying information. The second
22 functional area is interacting with others. The third functional area is concentrating, persisting, or
23 maintaining pace. Lastly, the fourth functional area is adapting or managing oneself. The ALJ
24 found that Plaintiff had moderate limitations in all four functional areas. (AR 26-27).

25 The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium
26 work as defined in 20 C.F.R. § 404.1567(c). (AR 27). The ALJ determined that Plaintiff's
27 impairments could reasonably be expected to cause her alleged symptoms but the intensity,
28 persistence, and limiting effects of those symptoms were not entirely consistent with the evidence

in the record. (AR 27-30). The ALJ, citing to treatment notes, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff' physical and mental impairments. (AR 29). The ALJ examined the opinion of state agency physician David Kroning, finding it unpersuasive. (AR 29).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 30). The ALJ concluded by discussing the VE's testimony and the Dictionary of Occupational Titles ("DOT"), finding that Plaintiff would be able to perform the requirements of jobs that exist in significant numbers in the national economy, namely machine feeder, cleaner, and machine helper. (AR 30-31).

The ALJ found Plaintiff had not been under a disability from February 1, 2017, through December 31, 2017. (AR 31-32).

**B. Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.    STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205,

42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not

disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### III. ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying her application. (Doc. 1). Plaintiff raises the following issues:

1. The ALJ erred by failing to find obstructive sleep apnea to be a severe impairment and failed to support the physical RFC with substantial evidence (Doc. 20 at 8-10);

2. The ALJ violated Plaintiff's due process rights by failing to allow cross-examination of a material witness (*id.* at 10-11).

### A. Whether the ALJ Erred by Failing to Find Obstructive Sleep Apnea to Be a Severe Impairment and Support the RFC with Substantial Evidence

Plaintiff has the burden of producing evidence to demonstrate that she was disabled within the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). At step two, the ALJ must consider if a claimant has an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (quotation and citations omitted). Step two, then, is "a de minimis screening device [used] to dispose of groundless claims." *Id.* at 1290. An ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quotations and citation omitted). A step two finding must be supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 686.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); *id.* § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that

6

are credible and supported by substantial evidence in the record. *Id.* However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his residual functional capacity determination ... These limitations were entirely consistent with Dr. Koogler's limitation."). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

Any RFC that fails to include all of a claimant's credible limitations and any subsequent opinion of a vocational expert are "incomplete." *See Bagby v. Comm'r Soc. Sec.*, 606 F. App'x 888, 890 (9th Cir. 2015). An ALJ need not use the same language as the medical opinion setting forth the limitations, as long as the RFC sufficiently accounts for the limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir. 2008).

### i. Parties' Arguments

Plaintiff asserts that the ALJ erred by failing to find her obstructive sleep apnea to be a severe impairment. Plaintiff states that the "evidence cited does not support the ALJ's conclusion," specifically regarding whether Plaintiff's sleep apnea was controlled with a continuous positive air pressure ("CPAP") machine. Plaintiff provides that the record indicates only that Plaintiff sought a new CPAP machine, but not "whether the disease is controlled or uncontrolled." (Doc. 20 at 8; citing AR 364, 371). Plaintiff asserts that the record contains references to Plaintiff being "easily fatigued" during a therapy session, becoming excessively sleepy and sleeping a lot, including in her testimony during the hearing. *Id.* (citing AR 49, 153, 165, 386).

Plaintiff states that the "root of the error was that the ALJ interpreted the medical findings on his own," as the evidence cited by the ALJ arrived after the state agency physician reviewed the claim and, thus, left the only "interpretation of the meaning of the evidence in the ALJ's hands." *Id.* at 9 (citing AR 364, 371).

While Plaintiff "does not disagree that she is indeed impaired in her physical capacity, Plaintiff maintains that the ALJ failed to logically connect the effects of her impairments to the assessed medium RFC." Plaintiff states, generally, that as the ALJ discounted the findings of state

agency physician David Kroning, as well as Plaintiff and Plaintiff's husband, "it is evident that the ALJ relied on [his] own lay interpretation of the evidence." *Id.* at 8.

Plaintiff provides that the ALJ failed to indicate what evidence supported the determination that Plaintiff could perform medium work, particularly regarding her obstructive sleep apnea and diabetes mellitus. Plaintiff states that the ALJ failed to discuss whether "reported fatigue was attributable to diabetes or sleep apnea" and the error was not harmless, as it would have resulted in the ALJ finding Plaintiff unable to perform any work "due to her inability to meet the attendance tolerances to which the VE testified." *Id.* at 9-10.

Defendant asserts that Plaintiff "has not met her burden of proving that her sleep apnea caused significant work-related restrictions through her date last insured." (Doc. 24 at 5). Defendant argues that the record includes no notable treatment for Plaintiff's sleep apnea prior to the date last insured (December 31, 2017), that Plaintiff did not list sleep apnea as an alleged condition when she applied for disability, that Plaintiff first mentioned her sleep apnea in a September 2018 disability appeals report, and that Plaintiff "merely stated she needed a new CPAP machine but she otherwise had no other issues" or positive symptom reports. *Id.* at 6 (citing AR 25-26, 144, 195, 292, 364).

Defendant argues that the ALJ's conclusion that her sleep apnea was controlled was reasonable because, in the cited medical record, Plaintiff "specifically denied having any other issues other than needing a new CPAP machine" and no positive symptoms were evidenced. *Id.* (citing AR 364). Defendant provides that Plaintiff's citation to "an observation of her appearing fatigued is also immaterial" as the instance occurred in July 2015, "more than a year prior to the relevant period." *Id.* (citing 386). Defendant asserts that Plaintiff's testimony during the hearing was "in response to questioning about how her diabetes affected her functioning," a condition the ALJ found to be severe and considered resulting fatigue therefrom in the RFC. *Id.* at 6-7 (citing AR 28, 48-49). Defendant argues that Plaintiff did not meet her burden at step two of proving her sleep apnea to be severe and, even assuming any step two error by the ALJ, any such error is harmless due to the ALJ having considered the functional effect of all Plaintiff's impairments and supported resulting limitations with substantial evidence. *Id.* at 7-8.

1    Defendant asserts that the ALJ reasonably noted that "while Plaintiff's diabetes was poorly
2    controlled for periods, Plaintiff's blood sugar levels improved after medication adjustments."  *Id.*
3    at 8 (citing AR 27, 236, 250, 263, 267).  Defendant argues that Plaintiff's "improved diabetes after
4    medication adjustments" and "fair diabetic control at the last treatment visit during the relevant
5    period," as well as unremarkable physical and mental examinations, support the ALJ's RFC
6    finding.  *Id.* at 11.  Defendant provides that "[a]t most, Plaintiff offers a different interpretation of
7    the evidence."  *Id.* at 9.

### *ii.  Analysis*

Regarding sleep apnea, the ALJ stated that Plaintiff "controlled her sleep apnea with a continuous positive air pressure (CPAP) machine," finding that sleep apnea caused no more than minimal work limitations.  (AR 26; citing AR 364, 370).  Plaintiff did not mention sleep apnea in her initial disability application and it was not mentioned in the decision denying the application.  (AR 61-64, 144).  Plaintiff did not indicate that any of the records offered were for sleep apnea, including from Bellaire Family Health Center, Old Town Psychological Services, and the Fresno VA Medical Center.  (AR 147-150).

A review of the transcript evidences records referencing Plaintiff's sleep apnea, with one dated March 27, 2018, authored by podiatrist Aditi Panchal (AR 292), and another dated May 1, 2018, authored by physician Gregory J. Trudell (AR 364-369) and a follow-up dated October 1, 2018, also authored by Dr. Trudell (AR 361-363).  The records from Dr. Panchal were provided by the Fresno VA Medical Center prior to the initial disability determination date of August 17, 2018 (AR 65), and those from Dr. Trudell from the Aleda E. Lutz VA Medical Center in Saginaw, Michigan, after the initial disability determination date but prior to the hearing with the ALJ.  (AR 280-348, 351).  Dr. Panchal includes sleep apnea under a category titled "PMH: Active Problem," and otherwise does not mention it.  (AR 292).  Dr. Trudell reports on May 1, 2018, that "Patient states she needs a new CPAP machine and supplies.  Patient has no new medical concerns at this time.  No other issues at this time."  (AR 364).  Dr. Trudell then states that "Patient will have a respiratory consult for CPAP evaluation and replacement machine and supplies for her OSA.  No other issues at this time."  (AR 367).  Neither sleep apnea nor resulting limitations are mentioned

9

1  in later addendums to this record, dated May 11, 2018, and signed by Dr. Trudell and registered
2  nurse Amy D. Marelich. (AR 368-369).
3        Dr. Trudell reports on October 1, 2018, that "Patient is currently on CPAP for her OSA …
4  No other issues at this time." (AR 362). Neither sleep apnea nor resulting limitations are otherwise
5  mentioned in this record. The records from the Aleda E. Lutz VA Medical Center include a report
6  with graphs and other information related to a "CPAP/BIPAP-OPT-Assessment Note," dated
7  October 25, 2018. (AR 370-371). There is no accompanying discussion or interpretation of this
8  report.
9        Additionally, in his third-party function report dated May 2, 2018, Plaintiff's husband states
10 that Plaintiff "either sleeps [too] much or [is] up all night," in response to the question "Do the
11 illness, injuries, or conditions affect his/her sleep?" (AR 153). However, there is no mention of
12 sleep apnea in relation, nor elsewhere in the third-party function report. (AR 152-59). In response
13 to the same question in her function report dated May 2, 2018, Plaintiff states that she has "difficulty
14 falling asleep" and "also sleep[s] too much." (AR 165). Earlier in the report, she states she has
15 "difficulty falling asleep." (AR 164). Plaintiff states therein that she has been using a CPAP
16 machine since 2009. (AR 170). On July 7, 2015, psychologist Kathy Katke recorded a clinical
17 visit with Plaintiff, noting she was "easily fatigued during the session," and that Plaintiff described
18 herself as "fatigued." She mentions Plaintiff is "exhausted from going to doctor's visits," after
19 noting she was "recently released from OMH where she was hospitalized for
20 bronchitis/COPD/pneumonia." There is no mention of sleep nor sleep apnea anywhere in the
21 record of the visit. (AR 386). A record of another visit from August 17, 2025, mentions "fatigue"
22 and "difficulty sleeping." There is no mention of sleep apnea anywhere in the record of the visit,
23 nor any further discussion concerning Plaintiff's difficulty sleeping as reported in visit. (AR 387).
24       "An ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert."
25 *Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1009-10 (E.D. Cal. 2017) (collecting cases). Here,
26 however, there is nothing in the ALJ's decision indicating that he interpreted raw medical data or
27 relied on his own medical judgment in assessing Plaintiff's sleep apnea or diabetes mellitus.
28 Nevertheless, contrary to the ALJ's characterization, neither of Dr. Trudell's reports, from May

1  and October 2018, suggest that Plaintiff's sleep apnea was controlled by a CPAP machine. Dr.
2  Trudell merely remarks that Plaintiff requires a new machine, that she will have a respiratory
3  consult for a CPAP evaluation and replacement machine, and later, that she is using the CPAP for
4  her sleep apnea. Though Dr. Trudell states that there were no other issues at the time, such language
5  as worded in the records cannot be clearly connected to his statement concerning the CPAP machine
6  or that usage of said machine controlled Plaintiff's sleep apnea.

7  As noted above, "an ALJ may find that a claimant lacks a medically severe impairment or
8  combination of impairments only when his conclusion is *clearly established by medical evidence*."
9  *Webb*, 433 F.3d at 687 (emphasis added). Additionally, a Court can "review only the reasons
10 provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon
11 which he did not rely. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Here, there is no
12 clear or affirmative indication in Dr. Trudell's reports that the CPAP machine sufficiently
13 controlled Plaintiff's sleep apnea. The ALJ proffers no additional reasons, nor cites to any other
14 evidence besides Dr. Trudell's records, for his conclusion. As such, it cannot be said that the ALJ's
15 conclusion that the Plaintiff's sleep apnea was non-severe was clearly established by medical
16 evidence. Furthermore, the Court cannot speculate as to other possible reasons why the ALJ may
17 have found sleep apnea non-severe.

18 The Court finds, in total, five factors weigh in favor of the determination that the ALJ erred
19 in his analysis of Plaintiff's sleep apnea. First, as noted above, the ALJ did not cite to medical
20 evidence clearly establishing the lack of a medically severe impairment. Second, sleep apnea is
21 mentioned in the medical record as an active problem (AR 292) and Plaintiff is noted by a physician
22 as using a CPAP machine for her sleep apnea and needing a respiratory consult (AR 362, 364).
23 The latter records post-date the initial disability determination and were not evaluated by the state
24 agency physician, but all the aforementioned records reference clinical visits after the date last
25 insured of December 31, 2017 (AR 65). Third, however, the record does provide evidence for
26 Plaintiff's daily use of a CPAP machine as early as 2009, well before the disability period, in
27 Plaintiff's function report (AR 170).

28 Fourth, Plaintiff was proceeding pro se during the application process and hearing. (AR 39,

57). Thus, the ALJ had a heightened duty to fully and fairly develop the record and to assure Plaintiff's interests were considered. "When the claimant is not represented by counsel, the ALJ must be especially diligent in exploring for all the relevant facts. When dealing with a pro se claimant, the ALJ has an important duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts, and he must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Hakchareum v. Barnhart*, No. C-03-00557-SC, 2003 WL 22134857, at *2 (N.D. Cal. Sept. 9, 2003) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) & *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981)).

Finally, the ALJ did not meet his duty to develop the record as to Plaintiff's sleep apnea and her usage of the CPAP machine. There are numerous ways the ALJ could have accomplished such a development of the record. The ALJ could have, for example, simply questioned the Plaintiff during the hearing regarding the record evidence of sleep apnea and her usage of a CPAP machine, or submitted questions to Plaintiff's physicians if records came in late. *See Ludmila N. A. v. Comm'r of Soc. Sec.*, No. 22-CV-06089-RMI, 2024 WL 1077325, at *4 (N.D. Cal. Mar. 12, 2024) ("If the record failed to sufficiently address Plaintiff's obesity, it was the ALJ's duty to conduct an appropriate inquiry, by, for example, ordering a consultative examination, subpoenaing [Plaintiff']s physician, or submitting further questions to [Plaintiff's physicians], or questioning Plaintiff herself.") (citation omitted).

During the hearing, the ALJ asked Plaintiff one question regarding sleep, namely "… about how many days a week or a month on average are bad days where you spend a lot of time resting or sleeping," with Plaintiff answering, "three to four a week." (AR 49). The ALJ did not mention sleep apnea, the CPAP machine, or otherwise question Plaintiff regarding said topics. As such, the ALJ did not sufficiently question the Plaintiff, nor did the ALJ employ any other method to develop the record. Thus, the record was and remains ambiguous as to Plaintiff's sleep apnea and any resulting limitations and the ALJ failed to properly develop the record thereto.

Nor can the Court find the ALJ's error harmless. An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). While an ALJ's failure to consider an impairment

"severe" at step two is harmless if the ALJ considers all impairments, regardless of their severity, in the subsequent steps of the sequential analysis,[2] here the record was left ambiguous as to Plaintiff's sleep apnea and it may be that additional limitations were warranted within the RFC that the ALJ did not include. The ALJ did not appear to clearly address sleep apnea in the RFC. The only reference to sleep the ALJ makes when discussing the RFC limitations is that Plaintiff "reported normal sleep." (AR 29). In support, the ALJ cites to one record from a psychotherapy appointment with therapist Michael P. Hayes, dated October 9, 2018. It is a one-page record, with 13 categories listed in the top half of the page, each marked "WNL." Of these categories, one is sleep; others are, for example, appearance, thought process, judgment, insight, and appetite. (AR 389). Sleep is not discussed otherwise in Dr. Hayes' record, nor is sleep apnea mentioned. The diagnostic impressions relate to major depression and post-traumatic stress disorder. *See id.*

Thus, the ALJ failed to adequately develop the record as to Plaintiff's sleep apnea. Because development of the record thereto may have evidenced additional limitations warranted in the RFC, the error is not harmless. *See Ormberg v. Astrue*, 254 F. App'x 589, 590–91 (9th Cir. 2007) ("The ALJ held that Plaintiff's sleep apnea is controlled with the use of a CPAP machine … The ALJ's conclusion is not supported by substantial evidence because the report on which the ALJ relied concluded that close follow-up was needed to assess the effectiveness of the CPAP machine. This error was not harmless …") (quotation omitted); *Ahmed v. Kijakazi*, No. 2:21-CV-0499 DB, 2023 WL 2333556, at *4 (E.D. Cal. Mar. 2, 2023) ("Under the circumstances presented here, the Court cannot say that the ALJ's conclusion that plaintiff's sleep apnea was non severe was clearly established by medical evidence … the ALJ did not consider plaintiff's obstructive sleep apnea in the subsequent steps of the sequential evaluation."); *Deminter v. Colvin*, No. 15-CV-05735 JRC, 2016 WL 1128235, at *4 (W.D. Wash. Mar. 23, 2016) (finding the ALJ's determination that "there is no indication of significant and ongoing problems sleeping through the date last insured" was not "based on substantial evidence in the record as a whole" and was not harmless); *Ludmila*, 2024 WL 1077325, at *4 ("The ALJ's failure to develop the record at step two is not harmless, as proper consideration of Plaintiff's impairments [including sleep apnea] may impact the ALJ's RFC

---

[2] *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

analysis and her ultimate disability determination."); *cf. Easly v. Colvin*, No. 6:12-CV-01173-JE, 2013 WL 5524491, at *7 (D. Or. Oct. 2, 2013) ("… the ALJ relied on unambiguous evidence that a CPAP machine effectively controlled Plaintiff's sleep apnea, and the record was sufficient to permit reasonable evaluation of the evidence concerning Plaintiff's impairments and limitations.").

The Court, having found that remand is warranted as discussed above, declines to address Plaintiff's remaining claims involving diabetes mellitus. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach this alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) (explaining that the "Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand").

## B. Whether the ALJ Violated Plaintiff's Due Process Rights by Failing to Allow Cross-Examination of a Material Witness

"Cases arising under the Social Security Act generally are not subject to review unless they challenge a final decision of the Secretary made after a [statutorily mandated] hearing." *Dexter v. Colvin*, 731 F.3d 977, 980 (9th Cir. 2013) (quoting *Califano v. Sanders*, 430 U.S. 99 (1977)). "An exception to this rule exists for any colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." *Id.* (citation and quotation omitted).

Pursuant to 42 U.S.C. § 406(c), the Commissioner is required to notify a claimant in writing of the options for obtaining attorneys to represent the claimant in presenting their case, and any such notification must "also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." *Roberts v. Comm'r of the Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) (citing 42 U.S.C. § 406(c)). Similarly, the Commissioner satisfies the duty to advise the claimant of her right to question witnesses by providing written notice prior to the hearing. *See Citizen v. Saul*, 830 F. App'x 224, 225 (9th Cir. 2020) (citing *Dexter*, 731 F.3d at 980, & *Roberts*, 644 F.3d at 934).

### i. *Parties' Arguments*

14

Plaintiff asserts that the ALJ erred in failing to allow her to cross-examine the VE. Plaintiff provides that she could have "asked questions about the need to lie down, the need to rest after standing or walking for a length [of] time or whether the inability to lift 50 pounds would inhibit an individual's ability to perform any of the cited occupations." Plaintiff asserts that she may have misinterpreted the ALJ's language during his questioning of the VE, particularly as to his statement of "no jobs available." Plaintiff states that the error is compounded by the fact Plaintiff was not represented at the hearing, as the ALJ "failed to inquire, at all, as to the Plaintiff's symptoms relative to the underlying severe impairment of diabetes mellitus, nor the impairment … obstructive sleep apnea." Plaintiff asserts that the ALJ, instead, found her sleep apnea and diabetes controlled despite medical evidence indicating otherwise. (Doc. 20 at 11).

Defendant asserts that the ALJ did not deny a request to ask the expert questions, but "merely did not expressly inform Plaintiff that she could ask the vocational expert further questions while both were present at the hearing." (Doc. 24 at 11). Defendant argues that, here, Plaintiff was informed that she could question witnesses in the July 2019 hearing notice and has, thus, failed to establish "that her due process rights regarding an ability to cross-examine the vocational expert were denied because she was informed of that opportunity in writing prior to the hearing." *Id.* at 12 (citing AR 98).

### ii. Analysis

A review of the relevant portions of the hearing transcript does not evidence any attempt by the ALJ to quash Plaintiff's ability to question the VE. (AR 51-55). The ALJ merely does not affirmatively advise Plaintiff during the hearing of her right to question the VE.

Plaintiff was provided a notice of hearing dated July 18, 2019. (AR 94-107). The notice set forth the particulars regarding the hearing, including the date, time, and issues to be addressed. Further, the notice provides as follows under the subpart labelled "Remarks": "A vocational expert will testify at your hearing. *You will be able to communicate with the expert.* You have a right to review the claim file. If you have not already reviewed the file or arranged to do so, please call this office at the number shown at the top of the first page of this notice." (AR 98) (emphasis added). On the same page, the notice provides under the subpart labelled "What Happens [at] the Hearing?":

15

> … You will have a chance to testify and tell me about your case … You and your representative (if you have one) may submit documents, *present and question witnesses*, state your case, and give written statements about the facts and law … I will ask you and any other witnesses questions that will help me make a decision in your case.

*Id.* (emphasis added). Further, the initial denial of Plaintiff's disability claim, dated August 17, 2018, contains a section titled "How the Hearing Process Works." There, Plaintiff is advised: "You can give the ALJ new evidence and bring people to testify for you. The ALJ also can require people to bring important papers to your hearing and give facts about your case. *You can question these people at your hearing.*" (AR 69) (emphasis added).

As such, Plaintiff was advised prior to the hearing of the presence of the VE, the ability to communicate with the VE, and her right to question witnesses. Thus, there is no indication Plaintiff's due process rights were violated as to her ability to cross-examine the VE.

Regarding attorney representation, Plaintiff was sent an explanatory letter by the Social Security Administration explaining the hearing process, dated October 10, 2018. (AR 77-91). She was advised of her right to representation therein. (AR 78). Attached to the letter is a document titled "Your Right to Representation," advising what a representative, such as an attorney, can do while acting on a claimant's behalf and what they may charge a claimant, as well as including contact information for the Social Security Administration. (AR 81-82). Following said document, the letter attaches a notice providing the contact information for the National Organization of Social Security Claimants, as well as contact information for legal aid organizations, bar associations, and other such entities across the state of Michigan. (AR 83-86). The notice of hearing form advised Plaintiff that she "may choose to have a representative help [her]." (AR 96). Additionally, attached to the notice is the same document titled "Your Right to Representation." (AR 101-102). The initial denial of Plaintiff's disability claim also advised Plaintiff that she could "have a friend, lawyer, or someone else help you" and that there are "lawyers who do not charge unless you win your appeal." (AR 70).

Further, the document titled Request for Hearing by Administrative Law Judge, dated September 17, 2018, and addressed to Plaintiff, summarizes Plaintiff's request for a hearing before

1    an ALJ. It states: "I understand I have a right to be represented and that if I need representation,
2    the Social Security Office or Hearing Office can give me a list of legal referral and service
3    organizations to assist me in locating a representative." (Doc. 113-114).

4    Plaintiff does not assert she did not receive these documents, nor that she was not advised
5    prior to the hearing of her right to representation. Furthermore, the ALJ raised the fact the Plaintiff
6    was not represented by counsel at the hearing, noting that the Social Security Administration
7    contacted Plaintiff "in June of [2019] … wherein someone from this office went over with you your
8    right to representation …" (AR 39). Plaintiff responded affirmatively upon being asked by the
9    ALJ, "And do you remember going over the Rights to Representation with them?" (AR 39).
10   Plaintiff then responded negatively upon being asked by the ALJ, "And at that time they indicated
11   to you that absent some extraordinary circumstance we would go forward today whether you had a
12   representative or not. Is there any reason we should not proceed today?" (AR 39). A review of
13   the transcript evidences that Plaintiff meaningfully participated in the hearing, answering questions
14   cogently and in detail throughout. *See* (AR 43-51).

15   As such, Plaintiff fails to establish her due process rights were violated both regarding her
16   ability to question the VE and her right to representation during the hearing. *See Burris-Hall v.*
17   *Astrue*, No. CV. 09-6354-MA, 2011 WL 653896, at *3–4 (D. Or. Feb. 14, 2011) (finding plaintiff's
18   due process claim failed where plaintiff did not contend "mental impairments limited her ability to
19   understand the written notices or the oral explanation provided by the ALJ about the hearing
20   process," did not demonstrate that "she was denied an opportunity to meaningfully participate in
21   the proceedings," and "a review of the transcript reveals that plaintiff actively participated in the
22   proceedings").

23                          *     *     *     *     *

24   In sum, the Plaintiff's due process rights were not violated during the hearing. However,
25   the ALJ erred in failing to develop the record as to Plaintiff's sleep apnea and the error was not
26   harmless.

27   The decision whether to remand for further proceedings or simply to award benefits is
28   within the discretion of the Court. *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990).

17

Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings;[3] where the record has been fully developed;[4] or where remand would unnecessarily delay the receipt of benefits to which the disabled Plaintiff is entitled.[5]

Here, Plaintiff seeks an order from the Court remanding the action for further proceedings (Doc. 20 at 12) and the Commissioner argues that the Court should affirm the ALJ's decision finding Plaintiff not disabled (Doc. 24 at 12). The Court concludes that remand for further proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where … an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

### IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 20) is GRANTED;
2. This matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:   **September 9, 2025**

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980).
[4] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986).
[5] *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).